Chauncy Charles LAWSON, et al., Plaintiffs,

v.

The METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Defendant.

No. 78 C 2235.

United States District Court, N.D. Illinois, E.D.

Dec. 6, 1983.

Judson H. Miner, Miner, Davis, Miner, Barnhill & Galland, Chicago, Ill., for plaintiffs.

Allen S. Lavin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This civil rights action is before the court on plaintiffs' motion for class certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs' Fourth Amended Complaint alleges that defendant Metropolitan Sanitary District of Greater Chicago ("MSD") "has maintained a continuing policy and practice of denying black employees equal employment opportunities" in the following and other related ways:

(a) assigning blacks to the "dirtiest and least desirable" jobs;

(b) refusing to grant "provisional assignments" to blacks, thereby depriving them of valuable training for job promotions;

(c) limiting the employment opportunities of blacks through "discrimination in ... transfer";

(d) employing promotion examinations that have a disparate impact on blacks;

(e) denying adequate training to blacks who have been promoted;

(f) demoting blacks based on subjective and invalid performance standards;

(g) retaliating against blacks who have filed charges of discrimination with the Equal Employment Opportunity Commission; and

(h) perpetuating and exacerbating the above practices by maintaining a virtually all-white supervisory and management force.

(Fourth Amended Complaint ¶ 12.)

As one of plaintiffs' claims for relief is based on violations of 42 U.S.C. § 2000e et seq., plaintiffs allege that among them, Charles Lawson, Melvin Troutman, Mary Robinson, and Charles Walker have exhausted their administrative remedies under that statute. Plaintiffs next set forth in detail the specific incidents of racial discrimination that each allegedly suffered. (Fourth Amended Complaint ¶¶ 13–17.) As a result of this claimed discriminatory behavior, plaintiffs complain that MSD violated 42 U.S.C. §§ 1981, 1983, and 2000e–2 (hereafter, "§ 1981," "§ 1983," and "Title VII"). (Fourth Amended Complaint ¶ 18.)

In their Motion for Class Certification, plaintiffs pray this court certify a class of:

All black citizens who have been, are, or will be employed by defendant [MSD] and who have been, are, or will be ad-

versely affected by MSD's policy of discriminating against blacks in its plants located in Cook County, Illinois....

(Motion for Class Certification p. 1.)

The purported policy of discrimination includes all the forms of employment discrimination alleged in the Fourth Amended Complaint. (Motion for Class Certification pp. 1–2.) In addition, since plaintiffs do not limit their motion to any particular theory of recovery, the court assumes they desire class certification with respect to claims brought under §§ 1981 and 1983 and Title VII.

MSD responds to this Motion by arguing that 1) certain named plaintiffs have not properly exhausted their Title VII administrative remedies, 2) plaintiffs have not met the Rule 23 requirements for class certification.

## I.

### Exhaustion of Administrative Remedies

■ While it is clear that all plaintiffs in a class action need not have exhausted their administrative remedies, all named plaintiffs must personally have satisfied the prerequisites for court action. *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir.1968); 2 A. Larson *Employment Discrimination* § 49.55, at 9B–151. The Seventh Circuit has explained that the purpose of a class action plaintiff's filing of an EEOC charge is to notify the charged party and bring to bear upon it the conciliatory efforts of the EEOC, to permit the EEOC to determine the validity of the charge, and to determine the scope of the violation. *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 720 (7th Cir.1969). The Court continued:

It is apparent that each of these purposes is served when any charge is filed and a proper suit follows which fairly asserts grievances common to the class to be afforded relief in court. There can be no claim of surprise in such a situation. Also, as held in *Miller v. Int'l Paper Co.*, 408 F.2d 283, 285 (5th Cir.

1969): " * * * no procedural purpose could be served by requiring scores of substantially identical grievances to be processed through the EEOC when a single charge would be sufficient to effectuate both the letter and spirit of Title VII."

*Id. See Phillips v. Klassen*, 502 F.2d 362, 369 (7th Cir.), *cert. denied*, 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974).

■ Plaintiffs have alleged that among them, Charles Walker, Melvin Troutman, Chauncey Lawson, and Mary Robinson have exhausted their administrative remedies. Harold Johnson, who admittedly has not, is dismissed as a named plaintiff. MSD takes issue with the adequacy of plaintiffs' efforts to exhaust their administrative remedies.

■ MSD contends that plaintiffs should be limited in the issues that they wish to assert in this action to the precise issues that they charged in their complaints to the EEOC and the Department of Justice and for which they received Notices of Right to Sue ("Notices"). Granting this premise, most of the issues of the complaint were raised in the charges. Plaintiff Walker, in EEOC complaint number 051821893, complained of retaliation by MSD as a result of his filing discrimination charges. Troutman, in number 051814770, claimed the MSD assigned duties and meted out punishment discriminatorily. Such discrimination allegedly caused him to be unjustly demoted from his position of Operating Engineer II. Mr. Troutman's complaint also contains an allegation that his supervisor did not properly monitor Troutman's working environment. (EEOC complaint number 051814770 at Ill.D.2.) This raises an inference that Troutman felt himself to be ill supervised because black. Mary Robinson complained of the discriminatory use of an invalid examination for promotion purposes in her EEOC complaint number 051781486. Lawson's EEOC complaint number 051771255 complains of unfair pro-

motion policies and unfair discipline applied to blacks by MSD.[1]

Were the court strictly to limit plaintiffs' Fourth Amended Complaint to the charges explicitly stated in their EEOC complaints, only the following allegations could not be maintained in this action: discriminatory job assignments, discriminatory refusal to grant "provisional assignments," and perpetuation of discriminatory employment practices through the maintenance of a virtually all-white supervisory force.

MSD is incorrect, however, in contending that any court action that grows out of a Notice of Right to Sue must limit itself strictly to the issues brought before the EEOC or the Attorney General.

> [T]he courts have developed a rule that allows a Title VII plaintiff to expand the complaint beyond the specific elements contained in the charge before the EEOC. Under such a rule, the elements that form the subject matter of the complaint may be broader than the charge, so long as those elements are reasonably related to the charge or may be reasonably expected to grow out of it.

2 A. Larson, *Employment Discrimination* § 49.83(c), at 9B–191 (1983). The Fifth Circuit first articulated this rule in *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970), when it held that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." The Seventh Circuit has accepted this standard of construing EEOC complaints. *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Roesel v. Joliet Wrought Washer Co.*, 596 F.2d 183, 187 (7th Cir.1979) ("Courts have consistently required a liberal reading of EEOC charges and have allowed subsequent judicial pro-

ceedings to encompass any discrimination reasonably related to the charge.").

Applying a related standard, one court in this district held that an EEOC charge of racially discriminatory discharge was sufficiently related to plaintiff's complaint which alleged denial of "equal opportunity for employment retention and advancement," "equal treatment under the applicable collective bargaining agreement," a nondiscriminatory system of "hiring, firing and promoting Negro workers," and nondiscriminatory use of a seniority system. *Willis v. Chicago Extruded Metals Co.*, 375 F.Supp. 362 (N.D.Ill.1974) (cited approvingly in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d at 167–8; *Roesel v. Joliet Wrought Washer Co.*, 596 F.2d at 187). Another court in this district, applying the test outlined in *Jenkins*, considered whether an EEOC charge of retaliatory discharge could support a subsequent court action alleging in addition that the employer discriminatorily harassed and assigned heavy work to plaintiff. *Aponte v. National Steel Service Center*, 500 F.Supp. 198, 201 (N.D.Ill.1980). Holding that it could, the court found that the charge, liberally construed, could support a set of facts that would show a reasonable relationship between the charge and the complaint. For example, the court explained, plaintiff could show that the allegedly discriminatory abusive language and heavy work assignments could have been directed to forcing plaintiff to quit his job. *Id.* at 201.

Courts discussing the latitude to be granted to the description of discriminatory conduct contained in an EEOC complaint have stressed the solicitude they should have toward *pro se* plaintiffs. *See Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) ("[T]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by

---

1. According to plaintiffs' Fourth Amended Complaint, Lawson filed an earlier charge with the EEOC in addition to number 051771255 discussed above. This charge alleged retaliation by MSD against Lawson for his filing race discrimination charges against MSD. MSD strong-ly disputes whether this charge was ever filed. Since plaintiff Walker has also filed charges against MSD alleging retaliation for complaining to the EEOC, the court need not determine at this point whether Lawson did actually file this earlier charge.

trained lawyers initiated the process.") In addition, they have explained that the eventual civil action is more related to the investigation that can be reasonably contemplated to grow out of a charge than to the charge itself. *Sanchez v. Standard Brands, Inc.*, 431 F.2d at 466. Such a standard, while not unduly penalizing an unsophisticated complainant, still serves to notify the employer of the type of charge leveled against it.

Plaintiffs' allegations of discrimination in job assignments, provisional assignments, and management composition are reasonably related to each of their EEOC complaints of discriminatory use of examinations, training, discipline, demotions, and retaliation. Hence, each plaintiff's EEOC charges of discrimination are sufficiently and reasonably related to their Fourth Amended Complaint.

■ MSD next argues that plaintiff Troutman, and, the court adds, Walker, received their Notices from the EEOC. Under Title VII, the Attorney General, and not the EEOC, is responsible for disposing of certain charges filed against a government, governmental agency, or political subdivision:

> In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ..., the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party,

the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge...

Plaintiffs counter that an EEOC regulation specifically provides for EEOC issuance of Notices in "all cases where the respondent is a government, governmental agency, or a political subdivision ... when there has been a dismissal of a charge." 29 C.F.R. § 1601.28(d), amended by 45 Fed. Reg. 73037, November 4, 1980. MSD contends that this regulation, because contrary to the statute and "in derogation of congressional intent," is invalid. In support, MSD cites *Osiecki v. Housing and Redevelopment Authority*, 481 F.Supp. 1229 (D.Minn.1979), and *Ferrell v. Association of Central Oklahoma Governments*, 481 F.Supp. 125 (D.Okla.1978). Both of these cases support the contention that Title VII, as opposed to the regulations promulgated thereunder, require the Attorney General to issue the Notices as a prerequisite to suit in federal court. However, neither construed the interaction between the statute and 29 C.F.R. § 1601.28(d) as it now reads (as a result of the November 4, 1980 changes in the regulations). The power that the amended regulation gives to the EEOC to issue Notices in the case where a charge against some governmental entity has been dismissed did not exist in the previous regulation.

The court is aware of several cases that have held this regulation invalid as conflicting with the clear purport of Title VII § 706(f)(1), 42 U.S.C. § 2000e-5(f)(1). *See* cases discussed in *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518, 1525-1526 (11th Cir.1983). However, in *English v. Ware County Department of Family & Children Services*, 546 F.Supp. 689, 691-692 (S.D.Ga.1982), the court discussed the old and amended regulation, treating the amended § 1601.28(d) as if it were clearly valid. Another recent case

impliedly referred to the regulation as valid. *Rozen v. District of Columbia,* 702 F.2d 1202, 1203 n. 2 (D.C.Cir.1983).

Even granting that § 1601.28(d) as amended were invalid, that is, that Troutman and Walker should have obtained Notices from the Attorney General, the court holds that their failure to do so is not fatal to their claims before this court. The Notices of Troutman and Walker are dated February 26, 1982 and July 23, 1982, respectively. Each admonishes:

> This is your NOTICE OF RIGHT TO SUE.
>
> \* \* \* \* \* \*
>
> The issuance of this NOTICE OF RIGHT TO SUE terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in the United States District Court. IF YOU DECIDE TO SUE, YOU MUST DO SO WITHIN NINETY (90) DAYS FROM THE RECEIPT OF THIS NOTICE OF RIGHT TO SUE; OTHERWISE YOUR RIGHT TO SUE IS LOST.

(Plaintiffs' Memorandum on Class Issues Exhibits C–D.) No indication that the recipient need request a Notice from the Attorney General appeared on these Notices or on the accompanying letter explaining the EEOC's dismissal of the recipient's charge. Indeed, the EEOC would have had no reason to so indicate, since its own regulations at the time of the issuance of the Troutman and Walker Notices provided that when dismissing a charge against a governmental entity, the EEOC could issue the Notice. 29 C.F.R. § 1601.28(d). In effect, MSD expects Troutman and Walker to have discerned that § 1601.28(d) was in fact invalid and to have persisted in seeking a Notice from the Attorney General despite EEOC instructions to the contrary.

Courts have held that the receipt of a Notice is a condition precedent to a claim under Title VII, rather than a jurisdictional prerequisite. *E.g., Pinkard v. Pullman-Standard,* 678 F.2d 1211 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729,

74 L.Ed.2d 954 (1983); *Jackson v. Seaboard Coast Line Railroad,* 678 F.2d 992 (11th Cir.1982). As such, "the receipt of a right-to-sue letter . . . on proper occasion may be equitably modified." *Pinkard v. Pullman Standard,* 678 F.2d at 1218–1219.

The Court in *Fouche v. Jekyll Island-State Park Authority* granted equitable modification of the statutory requirement that a Title VII complainant against a governmental respondent must obtain a Notice from the Attorney General before instituting a court action. There, plaintiff Fouche had received a Notice from the EEOC, filing it with the district court. After defendant moved to dismiss the Title VII claim, Fouche's attorney requested a Notice from the Attorney General. The Attorney General refused to issue the letter, citing the amended § 1601.28(d) that directs the EEOC to issue the letter when charges against a governmental entity are dismissed. 713 F.2d at 1524. Stating that dismissal under these circumstances would be unfair to Fouche, the Court held that the facts before it warranted equitable modification of the statutory requirement that the Attorney General issue the Notice.

Similarly, in *English v. Ware County Department of Family & Children Services,* 546 F.Supp. 689, Title VII plaintiff English received a Notice of Right to Sue from the EEOC, instructing English, as did the letters of Troutman and Walker, to file suit within 90 days. The Notice, issued on September 28, 1980 (before the amendment of § 1601.28(d)), did not mention that only the Attorney General was empowered to issue the Notice in English's case. Defendant asked for a dismissal without prejudice while English obtained a Notice from the Attorney General and refiled her suit. The court noted that under *Chappell v. Emco Machine Works Co.,* 601 F.2d 1295 (5th Cir.1979), equitable suspension of time limits under Title VII is warranted when the EEOC "misleads a complainant about the nature of his rights under Title VII." 546 F.Supp. at 693. The court pointed out, however, that since the issuance of the Notice from the EEOC, § 1601.28(d) had

been changed to require the EEOC to issue the Notice in cases such as that of English. Hence, undoubtedly apprehensive that the Attorney General would refuse to issue the Notice (as it did under similar circumstances in *Fouche*), the court concluded that "the requirement of notice by the Attorney General should be waived in this case." 546 F.Supp. at 694.

Troutman's and Walker's failure to seek the Attorney General Notice is more justified than that of English, for their Notices were issued at a time when the amended § 1601.28(d) specifically provided that the EEOC should issue such Notices. English's Notice, on the other hand, was issued under the old regulation, requiring the Attorney General to issue *all* Notices in cases against governmental entities. Fouche's dilemma is closer to that of Troutman and Walker, because she sought and was refused a Notice from the Attorney General, which justified its action as conforming to the amended § 1601.28(d).

At the time of their receipt of their EEOC Notices, Troutman and Walker 1) were instructed by the content of the Notices to sue within 90 days of receipt, 2) were not told that they should seek Notices from the Attorney General, and 3) were operating in accordance with the clear prescription of amended § 1601.28(d). Even granted, although the court does not so hold, that the amended § 1601.28(d) were invalid because violative of Title VII's precepts, these circumstances at least merit equitable suspension of any time limits imposed on Troutman and Walker to obtain valid Notices and timely to file suit. However, the court goes further and holds that the delay resulting from any order that Troutman and Walker apply for Notices from the Attorney General, coupled with the lack of prejudice to MSD resulting from their obtaining Notices only from the EEOC, mandate waiver of any requirement that Troutman and Walker receive Notices from the Attorney General as a condition precedent to maintaining this action. *See English*, 546 F.Supp. at 694. Of course, were amended § 1601.28(d) to be held valid,

Troutman and Walker clearly could show receipt of proper Notices.

There is no exhaustion requirement for claims brought in conjunction with Title VII under §§ 1981 and 1983. A § 1981 claim brought in conjunction with a Title VII claim "is an independent remedy and EEOC procedures need not be employed prior to a § 1981 action." *Alpha Portland Cement Co. v. Reese*, 507 F.2d 607, 610 (5th Cir.1975). *See Waters v. Wisconsin Steel Works*, 502 F.2d 1309 (7th Cir.1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). In addition, it is not necessary to exhaust Title VII's administrative procedures when commencing a § 1983 suit. *Hines v. D'Artois*, 531 F.2d 726 (5th Cir.1976).

## II.

### *Requirements of Rule 23*

Plaintiffs must show that they can satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) before the court may grant their motion for class certification. Rule 23(a) allows named representatives to sue on behalf of all class members

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law of fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In determining whether these criteria are met, the court is guided by the Supreme Court's reminder in *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), that

> [S]uits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to the requirements of Fed.Rule Civ.Pro. 23 remains nonetheless indispensible.

*Id.* at 405, 97 S.Ct. at 1897; *see General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Hence, the court will examine each of Rule 23's requirements for certifying a class under Rule 23(b)(2).

*Numerosity*

■ Each of the named plaintiffs alleges that he or she was injured by MSD's various discriminatory employment practices. In addition, plaintiffs argue that in 1977, 1800 blacks were employed by MSD, the implication being that all were adversely affected by MSD's racially discriminatory policies. MSD's EEO-4 Report of 1977 shows that blacks occupied a much greater percentage of "service/maintenance" positions and a lower percentage of skilled craft positions than their percentage in the MSD workforce as a whole. Finally, Mary Robinson asserted in her EEOC charge that the examination she failed adversely affected other black examinees.

MSD responds to these factual assertions and arguments of sufficient numerosity by contending that (1) in fact, only 395 blacks were employed by MSD in 1977, and (2) plaintiffs have not described enough specific instances of discrimination to satisfy the numerosity requirement.

Other courts in this circuit have not held putative class representatives to showing so many single instances of discrimination as to constitute sufficient numbers of potential plaintiffs to satisfy the strictures of 23(a)(1). For example, in *Garcia v. Rush-Presbyterian-St. Luke's Medical Center,* 80 F.R.D. 254, 268 (N.D.Ill.1978), the court accepted statistics that Latinos were underrepresented in defendant's workforce generally and as skilled employees as proof that the numerosity requirement was satisfied. In *Resnick v. American Dental Association,* 90 F.R.D. 530, 538 (N.D.Ill.1981), plaintiffs' claim that a class of 200 past and present employees existed, all of whom were subject to defendant's policy of sex discrimination in employment, was sufficient to satisfy 23(a)(1). Clearly, statistics showing the number of employees subject to the employer's discriminatory policies

may be a close proxy for the actual number of class members. *See Petty v. Peoples Gas Light and Coke Co.,* 86 F.R.D. 336, 339 (N.D.Ill.1979) ("It is undisputed that, as evidenced by defendant's EEO-1 report, defendant company employs 676 blacks. The Rule 23(a)(1) requirement is therefore satisfied.").

Plaintiffs here have shown specific instances of discrimination along with statistics indicating that such discrimination occurred. They additionally have argued that 1800 blacks, all of whom were allegedly subject to MSD's discriminatory employment policies, were employed by MSD in 1977. The dispute over the exact number of employees, 1800 or, as MSD contends, 395, is irrelevant. Both figures indicate sufficient impracticability of joinder as to satisfy the numerosity requirement of Rule 23(a)(1).

*Common Questions of Law and Fact*

Rule 23(a)(2) requires the existence of legal or factual issues common to all class members. All questions of law or fact need not be shared, *Edmondson v. Simon,* 86 F.R.D. 375, 380 (N.D.Ill.1980), but the adjudication of the representatives' claim must require the decision of some common question concerning the claims of the other class members, *General Telephone Company of the Southwest v. Falcon,* 102 S.Ct. at 2371. Plaintiffs here allege that all members experienced MSD's discriminatory employment decisions which are clearly asserted to have been made at the top management levels. (*E.g.,* Fourth Amended Complaint ¶ 12(e).)

In recent cases that have stringently applied the requirements of Rule 23(a) to employment discrimination cases, commonality has not been found when class representatives have suffered one type of discrimination and sought to represent victims of another type. *Falcon,* for example, found erroneous the trial court's decision to allow a plaintiff who alleged discrimination in promotion to represent alleged victims of discrimination in hiring without some showing that he could adequately represent

**792**

such victims. 102 S.Ct. at 2371. The Court explained:

> Respondent's complaint provided an insufficient basis for concluding that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of petitioner to hire more Mexican-Americans. Without any specific presentation identifying the questions of law or fact that were common to the claims of respondent and of the members of the class he sought to represent, it was error ... to presume that respondent's claim was typical of other claims against petitioner by Mexican-American employees and applicants. If one allegation of specific discrimination were sufficient to support an across-the-board attack, every Title VII case would be a potential company-wide class action.

*Id.* at 2371. *See Local 194, Retail Wholesale and Department Store Union v. Standard Brands, Inc.,* 85 F.R.D. 599, 606 (N.D.Ill.1979) (representative plaintiffs' claims of discrimination in job assignment, transfer, and promotion do not share common questions of law or fact with putative class members who were discriminatorily denied employment).

Here, plaintiffs seek to represent black citizens who have been or are employed by MSD, and not those who have been denied employment. Hence, facts such as those in *Falcon* and *Standard Brands*, where potential antagonism existed between plaintiffs encountering discrimination while employed and those who were refused employment, are not present. Here, all class members share with named plaintiffs the alleged discrimination against black employees. In addition, among the four named plaintiffs, representatives of all types of discrimination can be found. For example, in the Fourth Amended Complaint (as opposed to the various EEOC charges), Lawson, Troutman, and Robinson claim job assignment discrimination; Lawson and Troutman claim provisional assignment discrimination; Lawson, Robinson, and Walker claim promotion discrimination; Lawson, Walker, and Robinson claim retaliation for

filing EEOC charges; Troutman claims training, discipline, and supervision discrimination; Robinson claims examination discrimination; and all were affected by the nearly all white management force. The only claim that no named plaintiff asserts is the discriminatory use of transfer (for which no factual allegations are provided).

Since the named plaintiffs have allegedly suffered various forms of employment discrimination, they share common factual and legal issues with other black employees who were or are subject to these alleged policies of discrimination. Plaintiffs may not, however, maintain an action for discrimination in transfer. Plaintiffs have not alleged a single fact showing that such discrimination occurred, to them or to other MSD employees. Such a dearth of facts clearly renders insufficient plaintiffs' pleadings with respect to this issue. *Peak v. Topeka Housing Authority,* 78 F.R.D. 78, 81 (D.Kan.1978). Moreover, by the analysis of *Falcon* and *Standard Brands,* plaintiffs have not suffered this type of discrimination and so may not adequately represent those who have.

*Typicality of Claims*

Typicality requires that plaintiffs have suffered discrimination similar to that suffered by the class. Hence, were any of the named plaintiffs victims of a discrimination unique to them, susceptible to unique claims or defenses, or not the object of discrimination at all, typicality would be lacking. *See* 2 A. Larson, *Employment Discrimination* § 49.52(c), at 9B–124. MSD vigorously argues that two named plaintiffs either suffered no discrimination at all or face very strong defenses by MSD. For example, MSD presents evidence tending to show that Troutman was a hostile and inadequate supervisor of the employees under his charge, providing a nondiscriminatory reason for his demotion. In addition, MSD argues that Lawson cannot complain of receiving the dirtiest assignments since he specifically indicated on his employment application that he desired a position as a manual laborer.

■ These arguments and factual presentations at most indicate that Lawson and Troutman may have difficulty proving that MSD discriminated against them in certain ways. However, a class representative need not prove that his or her claim will succeed as a condition of representation. *Huff v. Cass*, 485 F.2d 710, 714 (5th Cir.1973); *Roberts v. Union Co.*, 487 F.2d 387 (6th Cir.1973); *Markey v. Tenneco Oil Co.*, 439 F.Supp. 219, 226 (E.D.La.1977) (discusses issue in terms of adequacy of representation), *modified on other grounds*, 635 F.2d 497 (5th Cir.1981). There is no indication that the named plaintiffs' claims of discrimination, apart from potential weaknesses in Lawson's and Troutman's claims, are atypical of class claims. The prescription of Rule 23(a)(3) is therefore satisfied.

## Adequacy of Representation

Plaintiffs' lawyers clearly are sufficiently experienced and competent to handle this action. Additionally, the court finds no indication that the claims of plaintiffs and the class members are potentially antagonistic. MSD argues that plaintiffs may not represent former employees, since the four are currently employed by MSD. MSD does not support this argument with reasons. The court can construct a scenario whereby plaintiffs may pursue injunctive or declaratory relief (primarily benefiting them as current employees) more vigorously than damages. This is not a source of potentially strong antagonism, for both named plaintiffs and class members would benefit from monetary relief. Should any such conflict later arise, the court will consider changing the composition of the class at that time.

## Requirements of Rule 23(b)(2)

Plaintiffs' final hurdle is 23(b)(2)'s requirement that

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....

A Rule 23(b)(2) class is especially appropriate for the type of action before the court as the gravamen of the Fourth Amended Complaint is the elimination of discriminatory employment practices. Monetary relief is claimed, but such is tangential to the desired injunctive or declaratory relief. *E.g., Lelong v. Lanvin-Charles of the Ritz*, 19 F.E.P. 367 (S.D.N.Y.1978) (back pay requested for occupants of several different job categories); *Kraszewski v. State Farm General Insurance Co.*, 27 F.E.P. 27 (N.D. Cal.1981).

## III.

### Cut-Off Dates

Neither party has mentioned the relevant statutes of limitations to be applied in this action. The court will apply the limitations period generally applicable to the statutes invoked in this action.

## Title VII

■ Under Title VII, while timely filing of an EEOC charge by the class representative may satisfy the filing requirement of other class members, those other members' claims must not have been time-barred at the time of the representative's filing. *McKenzie v. Sawyer*, 684 F.2d 62, 72 n. 8 (D.C.Cir.1982); *Shehadeh v. Chesapeake & Potomac Telephone Co.*, 595 F.2d 711, 717 n. 19 (D.C.Cir.1978). The filing period generally begins to run when the plaintiff "knows or should know that the challenged act has occurred." *Yates v. Mobile County Personnel Board*, 658 F.2d 298, 299 (5th Cir.1981).

■ The first EEOC filing in this case occurred on April 12, 1977. This filing was timely as to claims reasonably expected to grow from its charges arising no earlier than October 15, 1976. The class therefore will include black citizens who knew or should have known no earlier than October 15, 1976 that MSD discriminated against them in one or more of the enumerated ways.

*§ 1983*

 A five year limitations period is applied to § 1983 actions in Illinois. *Beard v. Robinson,* 563 F.2d 331 (7th Cir.1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978); 42 U.S.C. § 1988; Ill. Code Civ.Pro. § 13–205. Applying this limitations period, the court determines that all black citizens who experienced the enumerated types of employment discrimination no earlier than January 5, 1973, may be class members in this action (January 6, 1973 fell on a Saturday).

*§ 1981*

Since § 1981 contains no statute of limitations, the most appropriate state statute is applied. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The Seventh Circuit has adopted a five year limitations period governing suits brought under § 1981. *Waters v. Wisconsin Steel Works of International Harvester Co.,* 427 F.2d 476, 488 (7th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). Class members claiming violations of § 1981 must have experienced the enumerated types of employment discrimination no earlier than January 5, 1973.

IV.

 The court certifies a class of black employees and former employees of MSD's Cook County plants who experienced discrimination in job assignment, provisional job assignment, employment related examinations, training, supervision, discipline and demotion, and general management composition. These present and former employees may join in the class Title VII claims if they knew or should have known no earlier than October 15, 1976 that MSD discriminated against them in one or more of the above enumerated ways. These present and former employees may join in the class of §§ 1981 and 1983 claims if MSD discriminated against them in one or more of the above enumerated ways no earlier than January 5, 1973.

It is so ordered.