**Paul H. MOORE, Plaintiff,**

v.

**Theodore FLORO, et al., Defendants.**

**No. 84 C 10824.**

United States District Court,
N.D. Illinois, E.D.

July 23, 1985.

---

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, Ill., for plaintiff.

**330**

## MEMORANDUM OPINION AND ORDER

DECKER, Senior District Judge.

Paul H. Moore (Moore) brought this civil rights action pursuant to 42 U.S.C. § 1983. Moore alleges that the six defendants violated his constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. The case is before the court on defendants' two motions to dismiss the complaint.

### I. *Factual Background*

The complaint contains the following allegations. Moore was formerly employed as an investigator by the public defender's office of McHenry County, Illinois. In 1979, defendant Theodore Floro (Floro) served as the state's attorney of McHenry County. On December 21, 1979, Moore attended Floro's Christmas party. At the party, Floro angrily told Moore to leave "before I break your skull." Complaint at ¶ 7. After complying with this threat, Moore was beaten by defendants Charles Terrell (Terrell) and Keith Grabrowski (Grabrowski), deputy sheriffs of McHenry County. *Id.* at ¶ 8. Terrell and Grabrowski acted with the belief that they would be immune from prosecution because of Floro's disdain of Moore. *Id.* at ¶ 9. As a result of the beating, Moore suffered severe head injuries, including a fractured skull. *Id.* at ¶ 8.

Immediately after the beating, Moore was taken into custody by officers of the Woodstock police department under the di-

rection of defendant Michael Fischer (Fischer), a police officer. *Id.* at ¶ 10. While at the police station, Moore requested medical treatment; neither Fischer nor Floro responded. *Id.* at ¶¶ 11–12. In addition, defendant Steven Bozer (Bozer), another police officer, took a photograph of Moore. Under Fischer's supervision, Bozer only photographed the side of Moore's face unscathed by the beating. *Id.* at ¶ 13.

As a result of this incident, Moore was charged with aggravated battery. In November, 1980, Moore was acquitted after a criminal trial at which he testified. *Id.* at ¶ 14. Subsequently, because Moore's successful trial defense embarrassed Floro, defendant Robert Willbrandt (Willbrandt), the public defender of McHenry County, discharged Moore from his employment. *Id.* at ¶¶ 14–16.

Moore brought this § 1983 action on December 19, 1984. Floro moves to dismiss the complaint for failure to state a cause of action. The remaining defendants separately move to dismiss the complaint on the basis of untimeliness.

### II. *Discussion*

On April 17, 1985, the Supreme Court held for the first time that § 1983 claims are best characterized as personal injury actions for limitations purposes. *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Consequently, in furtherance of the federal policies of uniformity, certainty, and the minimization of unnecessary litigation, the Supreme Court upheld the application of a state personal injury statute of limitations to a § 1983 action. *Id.* at 1947–49. The threshold question presented by this case is whether *Wilson v. Garcia* should be applied retroactively to bar Moore's suit.[1]

---

1. Illinois has a two-year personal injury statute of limitations. Ill.Rev.Stat. ch. 110, § 13–202 (1983). Because Moore did not file this action until December 19, 1984, the court assumes that all of his claims would be time-barred under *Wilson v. Garcia* since each arose long before December 19, 1982.

In addition, Illinois has a five-year statute of limitations governing "all civil actions not otherwise provided for." Ill.Rev.Stat. ch. 110, § 13–205 (1983). This statute generally applies to those statutory causes of action that do not contain their own limitations period.

## A. Retroactivity

 Because prospective-only application is the exception rather than the rule, the party seeking to invoke the principle of nonretroactivity bears the burden of proving that such limited application is justified. *See Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1288 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). The Supreme Court has delineated the following tripartite analysis to determine whether a civil, nonconstitutional judicial decision will be denied full retroactive effect:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation".... Finally, we have weighed the inequity imposed by retroactive application, for

"[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (citations omitted).[2] This approach has " 'consistently been utilized where changes in statutes of limitations or other aspects of the timeliness of a claim are at issue.' " *E.E.O.C. v. Gaddis,* 733 F.2d 1373, 1377 (10th Cir.1984) (quoting *Occhino v. U.S.,* 686 F.2d 1302, 1308 n. 7 (8th Cir. 1982) ). In the Seventh Circuit, all three factors listed in *Chevron Oil* must favor prospective-only application before a decision will be denied retroactive effect. *See, e.g., Valencia,* 617 F.2d at 1289; *but cf. Jordan v. Weaver,* 472 F.2d 985, 996 (7th Cir.1973) (adopting in dicta a "threshold" test), *rev'd on other grounds sub nom. Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

 Under *Chevron Oil,* retroactivity is appropriate here unless *Wilson v. Garcia* establishes a new principle of law.[3] As

---

**2.** Notable among the prolific body of commentary attesting to the recent, often unpredictable, application of the prospectivity doctrine by the Supreme Court are Schaefer, *Prospective Rulings: Two Perspectives,* 1982 Sup.Ct.Rev. 1, and Note, *Confusion in Federal Courts: Application of the Chevron Test in Retroactive-Prospective Decisions,* 1985 U.Ill.L.Rev. 117 [hereinafter cited as Note].

**3.** There is a conflict among the federal courts that have addressed the retroactivity of *Wilson v. Garcia.* At the outset, the court notes that the Tenth Circuit consistently and persuasively declined to grant its opinion in *Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984), *aff'd,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) retrospective effect. *Jackson v. City of Bloomfield,* 731 F.2d 652, 655 (10th Cir.1984) (en banc); *see also E.E.O.C. v. Gaddis,* 733 F.2d 1373, 1378 (10th Cir.1984); *Abbitt v. Franklin,* 731 F.2d 661, 664 (10th Cir.1984) (en banc). The Supreme Court referred to *Jackson's* holding of nonretroactivity without comment. 105 S.Ct. at 1942 n. 10. With respect to the Supreme Court's opinion, the Third Circuit, applying the *Chevron Oil* factors, has ruled in favor of retroactivity. *Smith v. City of Pittsburgh,* 764 F.2d 188 (3d

Cir.1985). Conceding that *Wilson* represents an analytical break with past decisions, *Smith* largely turned on the absence of clear precedent within the Third Circuit on which plaintiffs could have reasonably relied. *Id.* Unlike the Seventh Circuit, the Third Circuit had not yet chosen the appropriate statute of limitations at the time plaintiff filed his § 1983 action. In fact, several federal courts had applied the Pennsylvania personal injury statute of limitations later mandated by the Supreme Court. *Id.* The Third Circuit distinguished the Tenth Circuit decisions mentioned above on these grounds. *Id.; see also Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985) (dicta in footnote applying *Wilson* retrospectively).

On the other hand, Judge Sharp, sitting by designation, has recently held that *Wilson v. Garcia* should be applied prospectively only in Illinois. *Winston v. Sanders,* 610 F.Supp. 176 (C.D.Ill. 1985). *Winston* emphasizes the massive reliance placed by litigants and lawyers on *Beard v. Robinson,* 563 F.2d 331 (7th Cir.1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978). *See infra* p. 332. In sum, *Winston* convincingly demonstrates that each of the *Chevron Oil* factors weighs against retroactivity in Illinois.

defendants concede, *Beard v. Robinson,* 563 F.2d 331 (7th Cir.1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978), stated the law in Illinois prior to *Wilson.* Resolving a conflict within the circuit, the Seventh Circuit in *Beard* held that the five-year Illinois residual statute of limitations applied to statutory claims brought under the Civil Rights Acts, including 42 U.S.C. § 1983. 563 F.2d at 338 (reaffirming *Wakat v. Harlib,* 253 F.2d 59 (7th Cir.1958)). In so holding, the Seventh Circuit squarely rejected the application of the two-year Illinois personal injury statute of limitations later mandated by the Supreme Court because of the "fundamental differences" between a civil rights action and a common law tort. *Id.* at 336–37. Far from being reversed, *Beard* was subsequently followed or cited with approval by the Seventh Circuit and numerous federal district courts in Illinois.[4] *See, e.g., Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985); *Sacks Brothers Loan Co. v. Cunningham,* 578 F.2d 172, 176 (7th Cir. 1978); *Lawson v. Metropolitan Sanitary District,* 102 F.R.D. 783, 794 (N.D.Ill.1983); *Killingham v. Board of Governors,* 549 F.Supp. 225, 226–27 (N.D.Ill.1982); *Hampton v. Hanrahan,* 522 F.Supp. 140, 142 (N.D.Ill.1981).

*Beard,* as well as the cases just cited, was good law in this district when Moore's cause of action accrued in 1979 and when he filed his suit in 1984. Thus, these cases constitute clear past precedent upon which Moore, his attorney, and others similarly situated in Illinois, may have relied.[5] The new rule announced in *Wilson v. Garcia* not only effectively overrules this line of precedent, but also makes a "clear break" with the past, *see, e.g., U.S. v. Johnson,* 457 U.S. 537, 550 n. 12, 551, 102 S.Ct. 2579, 2587 n. 12, 2588, 73 L.Ed.2d 202 (1982); *Hanover Shoe, Inc. v. U.S. Shoe Machinery Corp.,* 392 U.S. 481, 498, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968), and disapproves a practice arguably sanctioned by the Supreme Court in prior cases. *Cf. Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 488, 100 S.Ct. 1790, 1794–95, 1797, 64 L.Ed.2d 440 (1980) (courts must identify and apply statute of limitations of the state claim most closely analogous to the particular § 1983 claim at issue, as opposed to § 1983 claims in general); *Campbell v. Haverhill,* 155 U.S. 610, 616, 15 S.Ct. 217, 219, 39 L.Ed. 280 (1895). Thus, the crucial first step in the *Chevron Oil* analysis is satisfied here.

Furthermore, *Wilson v. Garcia* involved an issue of first impression before the Supreme Court whose resolution was not clearly foreshadowed. The dissent in *Wilson* chastises the majority for "jettisoning" a rule of venerable, though haphazard, application. 105 S.Ct. at 1949, 1951 (O'Connor, J., dissenting). Moreover, the primary rationale for the majority's holding was to remedy the "conflict, confusion, and uncertainty" among courts and practitioners regarding the appropriate statute of limitations to apply to this ubiquitous civil rights statute. *E.g.,* 105 S.Ct. at 1942, 1945 n. 25,

---

**4.** It is true that the Seventh Circuit subsequently applied Indiana's two-year personal injury statute of limitations to a civil rights action under 42 U.S.C. § 1981 in *Movement For Opportunity and Equality v. General Motors Corp.,* 622 F.2d 1235, 1243–44 (7th Cir.1980). The court, however, reaffirmed *Beard* and based its holding on the peculiar choices of limitations periods provided by Indiana statute. *Id.* at 1242. In particular, the Seventh Circuit emphasized that it was applying Indiana rather than Illinois law in *Movement. Id.* at 1241. Thus, the case in no way detracts from the precedential force of *Beard* in Illinois.

**5.** Although a diligent attorney should take notice of possible contrary authority in other jurisdictions, he is entitled to rely on a final decision

that is unimpeached in his own jurisdiction. Because the appropriate statute of limitations in a § 1983 action varies from state to state, the court considers the reliance of Illinois attorneys and litigants, including Moore. *Cf. Simpson v. Director, Office of Workers' Compensation Programs,* 681 F.2d 81, 85–86 (1st Cir.1982) (court must look to general societal reliance), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983); *Wachovia Bank and Trust Co. v. National Student Marketing Corp.,* 650 F.2d 342, 347–48 (D.C.Cir.1980) (court must look only to reliance of particular parties before the court), *cert. denied,* 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981); *cf. also* Note, *supra* note 2, at 129–32.

1946 n. 32. Prior to *Wilson*, opinion differed among and even within federal circuits over the appropriate statute of limitations. In this state of uncertainty, prediction as to which way the Supreme Court would turn was unclear.[6] Thus, *Wilson* definitively establishes a new and uniform principle of law.

Second, *Wilson* weighed the broad remedial purposes of § 1983 as well as the policies of uniformity, certainty, and the minimization of unnecessary litigation. On the one hand, to bar Moore's suit retroactively would be inimical to the beneficent purpose of Congress in enacting § 1983. On the other hand, it would be conducive, in an arbitrary manner, to the federal interests

of uniformity and certainty. On balance, the court cannot say that retrospective application in this case would clearly hamper or promote the Supreme Court's goals. *Cf. Jackson v. City of Bloomfield*, 731 F.2d 652, 654-55 (10th Cir.1984). Thus, the second factor of the *Chevron Oil* analysis is not alone determinative.[7]

Finally, the court concludes that retroactivity would impose a substantial inquiry in this case. At the time this suit was filed, *Beard* was clear authority that the five-year Illinois residual statute of limitations governed § 1983 actions brought in this state. Responsible counsel could have justifiably relied on *Beard* to infer that this suit was filed timely. Retroactive applica-

---

**6.** In a single sentence at the end of a recent criminal decision, a unanimous Supreme Court summarily rejected an argument against retroactive application of a prior ruling. *U.S. v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 1949, 80 L.Ed.2d 492 (1984). Without citing any authority, the Supreme Court noted that, even if the respondent could establish reliance on an Eighth Circuit case "on the books ... for a number of years," the Court would still apply its decision retrospectively "since the existence of conflicting cases from other courts of appeals made review of that issue by this Court and decision against the position of the respondent reasonably foreseeable." *Id.* at 1948-49. Although this bare pronouncement has not been cited by any published federal decision, it arguably seems to suggest that whenever there is a split of opinion on an important issue among federal courts of appeals, review by the Supreme Court is foreseeable, and the reliance factor central to the prospectivity doctrine is meaningless. *Cf. U.S. v. Johnson*, 457 U.S. 537, 551, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982). Such a construction would sweep far too broadly. In contrast, less than two months before its decision in *Rodgers*, the Supreme Court, in *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 1345, 79 L.Ed.2d 579 (1984), held that *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) should not be applied retroactively. The Court concluded that *Edwards* was not "clearly" or "distinctly" foreshadowed, in part because it resolved an unsettled question of law over which the lower courts widely disagreed. 104 S.Ct. at 1344-45. In these circumstances, the Court considered the reliance factor to be compelling, even though *Edwards* did not overrule a specific decision. *Id.* at 1345. Confronted with these contemporaneous, yet apparently conflicting signals from the Supreme Court, this court concludes that *Rodgers* does not foreclose the nonretroactive application of

*Wilson v. Garcia.* First, *Rodgers*, like *Solem*, is a criminal case. The Court's retroactivity opinions in the criminal field expressly acknowledge the vitality of the *Chevron Oil* test with respect to civil cases. *E.g., U.S. v. Johnson*, 457 U.S. at 550 n. 12, 102 S.Ct. at n. 12.

More importantly, the *Rodgers* statement, taken to its logical extreme, would vitiate *sub silentio* the three-prong *Chevron Oil* test by mandating retroactivity whenever there is a difference of opinion between any two federal courts of appeals. As a practical matter, because the Supreme Court often weighs heavily the existence of a conflict among the lower courts in granting certiorari, the potential for prospective-only rulings would be dramatically diminished. Under this scenario, the only reliable authority would be that published in the United States Reports. The court does not construe *Rodgers* as holding that parties may not reasonably rely upon any legal pronouncement emanating from sources other than the Supreme Court. *See U.S. v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975); *but cf. U.S. v. Johnson*, 457 U.S. at 551, 102 S.Ct. at 2587.

**7.** This conclusion does not foreclose a finding of nonretroactivity. The court does not read the Seventh Circuit's gloss that all three factors of the *Chevron Oil* test must be shown to favor prospective-only application as a mechanical requirement. *See, e.g., Valencia*, 617 F.2d at 1289; *cf. Jordan*, 472 F.2d at 996. Rather, the court interprets the *Chevron Oil* test flexibly, as the Supreme Court and the Tenth Circuit have, with the underlying principle of the prospectivity doctrine foremost in mind. *See infra* p. 334. As long as the second *Chevron Oil* factor does not support retroactive application, if the other two factors strongly favor nonretroactivity, the court sees no reason not to limit the application of a decision to prospective-only.

tion of the two-year personal injury statute of limitations would deprive Moore of any remedy whatsoever on the basis of a change in the law occurring after his action was filed. *See Chevron Oil,* 404 U.S. at 108, 92 S.Ct. at 356; *Jackson,* 731 F.2d at 655; *Winston v. Sanders, supra* note 3.

In sum, upon consideration of the *Chevron Oil* factors, the court holds that *Wilson v. Garcia* should not be applied retroactively in this case.[8] The touchstone of the doctrine of nonretroactivity is the protection of litigants and lawyers, who have justifiably relied on an old rule, from the unfair burden of an unexpected change in the law. *E.g., U.S. v. Johnson,* 457 U.S. at 550 n. 12, 102 S.Ct. at 2587 n. 12; *Milton v. Wainwright,* 407 U.S. 371, 381–82 n. 2, 92 S.Ct. 2174, 2179–80 n. 2, 33 L.Ed.2d 1 (1972) (Stewart, J., dissenting); *see* Note, *supra* note 2, at 136–37. Adhering to this rationale, the court holds only that Illinois litigants and lawyers could have justifiably relied on clear Seventh Circuit precedent that was controlling until the advent of *Wilson v. Garcia.* Even assuming that retroactivity might further some of the concerns addressed by the Supreme Court, this factor is greatly outweighed by the manifest injustice that would result in mechanically shortening the limitations period. *See Jackson,* 731 F.2d at 655; *Abbitt v. Franklin,* 731 F.2d 661, 664 (10th Cir.1984) (en banc); *see also N.L.R.B. v. Chicago Marine Containers, Inc.,* 745 F.2d 493, 499 (7th Cir.1984). The court will not bar plaintiff's right to a day in court under these circumstances. *Accord, Winston v. Sanders, supra* note 3; *cf. Gaddis,* 733 F.2d at

1378; *Abbitt,* 731 F.2d at 664; *Jackson,* 731 F.2d at 655.

### B. *Motions To Dismiss*

It is well-settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Although all of its allegations must be taken as true on a motion to dismiss, the complaint must "contain either direct allegations on every material point necessary to sustain a recovery on any legal theory ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 654 (7th Cir. 1984).

#### 1. *Floro*

■ Moore asserts that Floro violated his Fourth and Fourteenth Amendment rights by—1) encouraging Terrell and Grabowski to beat Moore by threatening him at the Christmas party and 2) denying Moore medical treatment. Complaint at ¶¶ 18–19. Since neither of these acts is "intimately associated with the judicial phase of the criminal process," Floro is clearly not entitled to the absolute prosecutorial immunity that he demands. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976).

■ Nevertheless, the court concludes that both counts fail to state a cause of

---

**8.** The Seventh Circuit's opinion in *Landahl v. PPG Industries, Inc.,* 746 F.2d 1312 (7th Cir. 1984), granting retroactive effect to the Supreme Court's rule in *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), is not to the contrary. *Landahl* held that a lawyer could not justifiably rely on a state court decision of questionable vitality where there was a conflict among the federal circuit courts of appeals. 746 F.2d at 1315. In contrast, the plaintiff in this case, as well as all plaintiffs similarly situated, was justified in believing that he unequivocally had five years from the date on which his

cause of action accrued to file his § 1983 claim under *Beard v. Robinson.*

Furthermore, *Del Costello* was clearly foreshadowed by recent Supreme Court cases, and its retroactive application promoted the strong federal policy of rapid disposition of labor controversies. *See id.* On the other hand, *Wilson v. Garcia* sharply departed from past Supreme Court precedent, and the remedial policies behind § 1983 actions would be disserved by its retroactive application. *See Winston v. Sanders, supra* note 3. Thus, *Wilson* represents far more than a mere clarification of the law. *Cf.* 746 F.2d at 1315.

action. First, plaintiff seeks to hold Floro liable for Moore's injuries solely because two other defendants overheard Floro's threat and therefore assumed they could attack Moore with impunity. This convoluted contention, involving a double set of subjective inferences, is too remote and speculative to sustain a § 1983 action in federal court. Regardless of Floro's feelings, to establish a constitutional violation under § 1983, plaintiff must allege some affirmative conduct on the part of Floro that evidences a causal connection between his statement at the party and the later beating. Because Moore does not allege that Floro directly incited, solicited, aided, or attempted to aid Terrell and Grabrowski, or was otherwise responsible for their actions, Floro cannot be held liable for their alleged misdeeds.

■ Second, plaintiff fails to allege or substantiate an affirmative duty on the part of Floro to order medical treatment for Moore. Plaintiff merely asserts that Floro had the power, as state's attorney, to order such treatment. Having the power and having a legal obligation to do something are two markedly different concepts. Even if Moore's pleading is sufficient, it does little good to allege a non-existent legal duty. The court is unaware of any case or rule of law, and plaintiff cites none, imposing such an affirmative duty on a prosecutor absent, as here, any direct or conspiratorial responsibility for the injuries.[9]

Accordingly, the court grants Floro's motion to dismiss the complaint as to him.

### 2. *Willbrandt*

■ The complaint alleges that Willbrandt discharged Moore from his employ-

ment for the exercise of his First Amendment rights. Complaint at ¶ 21. Under a liberal construction of the complaint, the protected speech appears to be Moore's successful defense at his criminal trial. *Id.* at ¶ 14.

Willbrandt argues that Moore fails to state a claim for retaliatory discharge because his speech is not constitutionally protected. The court rejects this argument. "[T]he first amendment protects the right to testify truthfully at trial." *Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir. 1982). Furthermore, the court holds that truthful testimony of a public employee at trial, particularly when the employee is a criminal defendant, involves, by definition, matters of public interest and is therefore protected speech under the recent Supreme Court analysis in *Connick v. Myers*, 461 U.S. 138, 146–47, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983).[10]

Accepting his allegations as true, the court concludes that Moore sufficiently states a claim under § 1983 for retaliatory discharge on the basis of constitutionally protected speech.

### 3. *The Remaining Defendants*

■ Because the court has already rejected the statute of limitations defense, the only basis for the other defendants' motion to dismiss is laches. The equitable doctrine of laches, however, does not apply to this action at law. *See, e.g., Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351, 354 (7th Cir.1979). Since the remaining defendants raise no additional arguments, their motion to dismiss is denied.[11]

---

**9.** Furthermore, even if there were such a duty, Floro would be shielded from liability by qualified immunity because his alleged misconduct was nothing more than a discretionary act which did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 818 n. 30, 102 S.Ct. 2727, 2738, 2738 n. 30, 73 L.Ed.2d 396 (1982).

**10.** In this connection, defendants' reliance on *Altman v. Hurst*, 734 F.2d 1240 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 385, 83 L.Ed.2d

320 (1984), is misplaced. As the Seventh Circuit made clear, the conduct in *Altman* concerned a private personnel dispute. *Id.* at 1244, 1244 n. 10.

**11.** The court expresses grave doubt whether Moore has stated, or is able to state, a claim under § 1983 against Bozer. It seems untenable that merely photographing Moore's "good side" could constitute a constitutional violation under the facts of this case. In the absence of any protest by Bozer, however, the court will not take any action at this time.

### III. *Conclusion*

·For the foregoing reasons, the court grants defendant Floro's motion to dismiss the complaint but denies the remaining defendants' motion. Accordingly, the complaint is dismissed only as to Floro.