Earl CARPENTER, Appellant,

v.

WEST VIRGINIA FLAT GLASS, INC.,
and Local No. 524, United Glass and
Ceramic Workers of North America,
Defendants,

and

United Glass and Ceramic Workers of
North America, Appellee.

No. 84–1435.

United States Court of Appeals,
Fourth Circuit.

Submitted Dec. 4, 1984.

Decided June 4, 1985.

Robert M. Bastress, Morgantown, W. Va., on brief, for appellant.

R. Michael LaBelle, Thomas P. Powers, Washington, D.C., on brief, for appellee.

Before WIDENER and SNEEDEN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge.

Earl Carpenter sued United Glass Ceramic Workers of North America, an international union, for breaching its duty to fairly represent him after he was discharged by West Virginia Flat Glass. The district court held that the international union's representation was adequate and entered judgment for it. Carpenter appeals, and we reverse.

## I

Carpenter was employed by the predecessor of West Virginia Flat Glass in August 1977 to work on the production line. In June 1978, he injured his back while cleaning behind his machine and missed three weeks of work. In January 1979, he reinjured his back and was unable to work for several months. While he was out, the company halted production and sold the plant. When the plant reopened in October 1979, Carpenter attempted to return to work, but after another reinjury he claimed he was unable to do the heavy renovation work that was then available at the plant. His doctor, Dr. Martin, gave him a "light duty" slip, but the company had no light work available. Carpenter then obtained a "no duty" slip.

West Virginia Flat Glass asked Dr. Wilson, the company doctor, to examine Carpenter. Dr. Wilson did not explicitly state whether Carpenter could or could not work. He reported on November 13, 1979, that Carpenter had a 5% permanent partial disability and that maximum improvement had been achieved. Based on these findings and Carpenter's claim that he was unable to perform heavy labor without pain the company discharged him on November 19, 1979.

The local union filed a timely grievance, taking the position that Carpenter was now able to work, and that his position was supported by his treating physician, Dr. Martin. The company took the position, based on Dr. Wilson's report, that Carpenter was unable to work and therefore was properly discharged. The local processed the grievance through the first three stages of negotiations without success.

At the fourth stage, under terms of the collective bargaining agreement, the international union became involved. A representative from the international met with company officials in April 1980 and the parties agreed to obtain a third opinion whether Carpenter could work from a doctor chosen by Dr. Martin and Dr. Wilson. The parties agreed to be bound by that opinion. The agreement also provided that Carpenter should relinquish his claim for back pay.* Carpenter approved the agreement.

Carpenter was examined by the third doctor, Dr. Mills, who reported on April 25, 1980, that Carpenter had a 5% permanent partial disability and that maximum improvement had been reached. He did not state specifically whether he thought Carpenter was able to work in the plant. The company interpreted the report to be consistent with Dr. Wilson's diagnosis of November 1979, the union agreed, and the

---

* The district court noted that the submission to Dr. Mills, the third doctor, was not in writing and was vague. The parties, however, do not dispute the essential terms of the agreement. In its brief on appeal, the union described the submission as follows: "[I]t was agreed that it would be better [than arbitration] to have a third medical doctor render a new opinion as to whether or not Mr. Carpenter could work. This doctor would be chosen by the two previous doctors who had conflicting opinions."

Dr. Mills testified that the plant manager arranged for the examination and told him "to determine [Carpenter's] ability to work."

company affirmed the discharge on May 7, 1980.

On September 29, 1980, Carpenter filed suit under § 301 of the National Labor Relations Act, 29 U.S.C. § 185(b), against the company for wrongful discharge and against the local union for breaching its duty to fairly represent him in the grievance process. In July 1981, he amended his complaint to include the international union. He subsequently settled his claims against the local union and his employer.

Carpenter's principal complaint against the international is its failure to contact Dr. Mills about his April 1980 report which omitted to answer the parties' inquiry about whether Carpenter could work. The international contends that it was justified in not pursuing the matter because Dr. Mills's report was consistent with Dr. Wilson's report.

In his testimony at the trial, Dr. Mills acknowledged that although he had been asked to determine Carpenter's ability to work, he had not reported on this question. Neither the company nor the international called this omission to his attention. He testified that in his opinion at the time of his examination Carpenter was physically able to work.

The plant manager testified that if Dr. Mills's report had stated that Carpenter could return to work, he would have abided by this decision and reemployed Carpenter.

The district court held that because of the similarity between Dr. Wilson's report and Dr. Mills's report about Carpenter's 5% permanent partial disability, the union was justified in acquiescing in the discharge. Consequently, it concluded that the union did not unfairly represent Carpenter, and it dismissed his complaint.

## II

■ The union argues in its amended answer and on appeal that the suit should be dismissed as untimely. It relies on DelCostello v. Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), in which the Supreme Court adopted a six-month statute of limitations period for suits against a union for failure to adequately represent an employee, borrowing from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). In response, Carpenter argues that DelCostello should not be applied retroactively to his case. The district court did not address the question.

In Zemonick v. Consolidation Coal Co., 762 F.2d 381 (4th Cir.1985), this court held that DelCostello would not be applied retroactively to bar a § 301 suit in West Virginia for breach of the collective bargaining agreement by an employer and breach of the duty of fair representation by the union. The court pointed out that the six-months period in DelCostello was a clean break from past precedent in West Virginia where the statute of limitations for these suits was established by case law to be five years. Since Carpenter filed his action in West Virginia well within the five-year period, Zemonick is controlling, and DelCostello does not apply retroactively to bar him.

## III

■ In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court held that a union breaches its duty to fairly represent the employees covered by the collective bargaining agreement if its conduct is arbitrary, discriminatory, or in bad faith. Although negligence alone does not constitute unfair representation, the breach need not be intentional. Wyatt v. Interstate Ocean Transport Co., 623 F.2d 888, 891 (4th Cir.1980). Proof that a union "processed a grievance in a perfunctory manner" is equivalent to arbitrary conduct constituting a breach of the duty of fair representation. See Vaca, 386 U.S. at 194, 87 S.Ct. at 918; Wyatt, 623 F.2d at 891. The Vaca perfunctory standard permits courts to insure that unions represent individuals fairly by delineating a minimum standard of fair representation. See Findley v. Jones Motor Freight, 639 F.2d 953, 960 and n. 2 (3d Cir.1981); Clark, The Duty of Fair Representation, 51 Tex.L. Rev. 1119, 1170–72 (1973).

The international's suggestion that a third doctor examine Carpenter and determine whether he could work was reasonable. Its agreement to waive all back pay, which Carpenter approved, also was reasonable, for this facilitated a very sensible solution to the issue of whether Carpenter should be reinstated. Nevertheless, proper application of the standards for reviewing a union's statutory duty of fair representation in grievance proceedings requires reversal of the judgment in its favor.

■ After Carpenter waived his claim for back pay, the critical issue for the international and the company to resolve was whether he should be reinstated. This depended on whether he was physically able to work at the plant. It was for this reason that the parties referred Carpenter to Dr. Mills. When Dr. Mills omitted to report about Carpenter's ability to return to work, the international's representative did nothing to rectify this omission. He did not call it to the attention of the company or ask Dr. Mills to supplement his report. Instead, he acquiesced in the company's decision to discharge Carpenter.

The representative's explanation at trial was the similarity between the reports of Dr. Wilson and Dr. Mills. But Dr. Wilson's report was written in November 1979. Even then, it did not explicitly state whether Carpenter could return to work. Dr. Mills examined Carpenter in April 1980. In the meantime, Carpenter had been treated for his injury. His own doctor, who had put him on "light duty" and "no duty" status in October 1979, had found him fit for normal work in March 1980. The international's representative either knew these facts or by a reasonable investigation could have learned them. There is no evidence that he consulted Carpenter's doctor to get an up-to-date report in light of Dr. Mills's diagnosis. The representative did not even ask Carpenter whether his condition was the same as it had been when Dr. Wilson examined him nearly five months before. In fact, he never informed Carpenter of Dr. Mills's report.

The international's failure cannot be attributed to bad faith or discrimination. But it processed the grievance in such a perfunctory manner that its conduct must be deemed arbitrary within the meaning of this term as explained in *Vaca v. Sipes*, 386 U.S. 171, 188–95 (1967). The judgment is reversed, and the case is remanded for consideration of an appropriate remedy. *See Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983).

REVERSED AND REMANDED.