**CHRIS N., Plaintiff,**

v.

**BURNSVILLE, MINNESOTA, a political subdivision, and John Does 1–10, Defendants.**

Civ. No. 4–85–1423.

United States District Court,
D. Minnesota,
Fourth Division.

May 13, 1986.

Charles S. Zimmerman and Barry G. Reed, Zimmerman, Caplan & Reed, Minneapolis, Minn., for plaintiff.

Kirk A. Stubbee and John T. Chapman, Arthur, Chapman, Michelson & McDonough, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motion to dismiss. Defendants' motion will be denied.

### FACTS

Before the Court is defendants' motion to dismiss in one of the so-called "strip search" cases. Plaintiff was detained by city of Burnsville police July 2, 1982. Plaintiff, dressed only in shorts and a tee shirt, gave a ride on his motorcycle to an acquaintance. The destination was the passenger's automobile. Upon reaching the automobile plaintiff was confronted by several Burnsville city police officers with weapons drawn. The police arrested plaintiff's passenger for suspected theft. Although the police concededly had no reason to suspect plaintiff of wrongdoing, plaintiff was also arrested, detained, and subjected to a full strip search. The search allegedly included a visual body cavity search. Plaintiff thereafter brought this suit pursuant to 42 U.S.C. § 1983, alleging deprivation of his rights under the fourth, fifth, eighth, ninth, and fourteenth amendments to the United States Constitution, and seeking actual damages of $50,000, punitive damages of $100,000, costs and fees.

Defendants now bring this motion to dismiss, on the ground that plaintiff's cause of action is time-barred. Resolution of this issue turns on whether the Supreme Court's recent decision in *Wilson v. Garcia*, — U.S. —, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), is to be applied retroactively in the circumstances presented by the case at bar.[1]

---

1. The question of *Wilson*'s retroactivity is one which has split the courts. To date, decisions holding that *Wilson* is to be applied retroactively include: *Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985); *Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1985); *Rivera v. Green,* 775 F.2d 1381 (9th Cir.1985); *Fitzgerald v. Larson,* 769 F.2d 160 (3d Cir.1985); *Smith v. City of Pittsburgh,* 764 F.2d 188 (3d Cir.1985); *Bartholomew v. Fischl,* 782 F.2d 1148 (3d Cir.1986); *Gobla v. Crestwood School District,* 628 F.Supp.

## DISCUSSION

### A. Statute of Limitations in a § 1983 Action

#### 1. The Wilson Decision

The Federal Civil Rights Act, like many federal statutes, contains no specific statute of limitations. *Smith v. City of Pittsburgh,* 764 F.2d 188, 192 (3d Cir.1985). Under 42 U.S.C. § 1988, which governs several procedural aspects under those acts, the courts are authorized to borrow the forum state's appropriate statute of limitations, if that choice "is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988. Prior to the 1985 decision of the United States Supreme Court in *Wilson v. Garcia,* — U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the judicial task of selecting an appropriate state limitations period to apply in section 1983 actions had proven a fertile source of litigation, as the courts struggled with the task of selecting the "most analogous" state statute of limitations.[2] In *Wilson* the Supreme Court attempted to do away with this source of confusion by mandating that, in all future section 1983 actions, the courts are to uniformly apply the forum state's limitations period for personal injury actions. In so ruling, the Court rejected the use of other arguably analogous statutes of limitations, such as those for breach of contract actions, tort claims for damage to property, tortious acts committed by public officers or the states' catch all period of limitations. *Mulligan v. Hazard,* 777 F.2d 340, 343 (6th Cir.1985). The policy rationale underscoring Justice Stevens' *Wilson* opinion is threefold:

(1) a "simple, broad characterization" of all section 1983 claims as personal injury analogues best fits the "statute's remedial purpose" by eliminating the uncertainty which "inevitably breeds ... time-consuming litigation that is foreign to the central purposes of § 1983";[3]

(2) the Court found that "Congress intended the identification of the appropriate statute of limitations to be an uncomplicated task for judges, lawyers and litigants, rather than a source of uncertainty, and unproductive and ever increasing litigation";[4]

(3) the Court further found that "uniformity within each State is entirely consistent with the borrowing principle contained in § 1988."[5]

Accordingly, the Court directed the federal courts of each state to "select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Wilson,* 105 S.Ct. at 1947.

Subsequently, the United States District Court for the District of Minnesota, in the

---

43 (M.D.Pa.1985); *Snowden v. City of Carbondale,* 613 F.Supp. 1207 (S.D.Ill.1985); *Van Ryn v. County of Franklin,* 614 F.Supp. 400 (S.D.Ill. 1985); and the Eighth Circuit trilogy of *Wycoff, Bolton,* and *Farmer,* discussed *infra.*

Decisions holding that *Wilson* is to receive prospective application only include: *Jackson v. City of Bloomfield,* 731 F.2d 652 (10th Cir.1984) (applying *Garcia v. Wilson* ); *Abbitt v. Franklin,* 731 F.2d 661 (10th Cir.1984) (applying *Garcia v. Wilson* ); *Gibson v. United States,* 781 F.2d 1334 (9th Cir.1985); *Winston v. Sanders,* 610 F.Supp. 176 (C.D.Ill.1985); *de Furgalski v. Siegel,* 618 F.Supp. 295 (N.D.Ill.1985); *Cook v. City of Minneapolis,* 617 F.Supp. 461 (D.Minn.1985); *Shorters v. City of Chicago,* 617 F.Supp. 661 (N.D.Ill. 1985); *Wegrzyn v. Illinois Dept. of Children & Family Services,* 627 F.Supp. 636 (C.D.Ill.1986); *Hobson v. Brennan,* 625 F.Supp. 459 (D.D.C. 1985); *Johnson v. Arnos,* 624 F.Supp. 1067 (N.D. Ill.1985); *Bynum v. City of Pittsburgh,* 622 F.Supp. 196 (N.D.Cal.1985); *Small v. City of Belfast,* 617 F.Supp. 1567 (D.Maine 1985); *Estate of Cartwright v. City of Concord, California,* 618 F.Supp. 722 (N.D.Cal.1985); *Moore v. Floro,* 614 F.Supp. 328 (N.D.Ill.1985); *Ruley v. Nelson,* 106 F.R.D. 514 (D.Nev.1985).

**2.** As the Third Circuit explained in *Smith,* "[t]he courts of appeals were generally divided between two different approaches ...:

> The fundamental point of disagreement in selecting a statute of limitations for civil rights actions is whether such claims should be characterized in terms of the specific facts generating a particular suit, or whether a more general characterization of such claims should be applied regardless of the discrete facts involved."

*Smith,* 764 F.2d at 192, *quoting Garcia v. Wilson,* 731 F.2d 640, 648 (10th Cir.1984) (en banc), *aff'd,* — U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

**3.** *See Wilson,* 105 S.Ct. at 1945.

**4.** *See Wilson,* 105 S.Ct. at 1947.

**5.** *See Wilson,* 105 S.Ct. at 1947.

case of *Cook v. City of Minneapolis,* 617 F.Supp. 461 (D.Minn.1985), responded to the Supreme Court's directive by specifying the two-year limitations period of Minn. Stat. § 541.07(1) as the applicable statutory limitations period in all section 1983 actions filed in Minnesota district court. In *Cook* Chief Judge Alsop recognized that the task of selecting the "state statute of limitations applicable to personal injury actions" is complicated by the fact that "in ... Minnesota ... more than one statute of limitations govern personal injury actions." *Cook,* 617 F.Supp. at 463. Minn.Stat. § 541.05, subd. 1(5) (1984) specifies a six-year statute "for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated ...," while Minn.Stat. § 541.07(1) (1984) specifies a two-year statute "[f]or libel, slander, assault, battery, false imprisonment, or other tort resulting in personal injury...." *Cook,* 617 F.Supp. at 464. Following an extensive discussion,[6] Judge Alsop concluded that:

> a § 1983 claim should be characterized as a personal injury action along the lines of an intentional tort for statute of limitations purposes. Accordingly, for § 1983 claims brought in Minnesota, this court will borrow the two-year limitations period of Minn.Stat. § 541.07(1).

*Cook,* 617 F.Supp. at 464–65. Accordingly, in this district it is settled law that the two-year limitations period of Minn.Stat. § 541.07(1) applies to plaintiff's section 1983 claim. *See also Jane Does 1–100 v. Omodt,* CIV. 3–83–468 (D.Minn. Jan. 30, 1986) (Magnuson, J.); *Arvidson v. City of Mankato,* CIV. 4–85–877 (D.Minn. Apr. 8, 1986) (Murphy, J.). Consequently, plaintiff's cause of action, which accrued more than two years before filing, will be time-barred if *Wilson* is applied retroactively.

**B. Retroactive Application of Wilson**

The courts are bound to apply the law in effect at the time a decision is rendered. *Zemonick v. Consolidation Coal Co.,* 762 F.2d 381, 391 (4th Cir.1985). Indeed, the

Supreme Court has recognized that "a legal system based on precedent has a built-in presumption of retroactivity," *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984), although retroactive application of judicial decisions is not constitutionally compelled. *Id.* Consistent with this principle it has been repeatedly recognized that "the retroactive applicability of judicial decisions ... is the rule, not the exception," *Simpson v. Director, Office of Workers' Compensation Programs,* 681 F.2d 81, 84 (1st Cir.1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983), and that the party opposing retroactivity bears the burden of demonstrating that the decision should be given prospective effect. *Zemonick,* 762 F.2d at 391; *Moore v. Floro,* 614 F.Supp. 328, 331 (N.D. Ill.1985).

The test of whether a decision is to be applied retroactively is well established. In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court articulated a three-part test:

> First, did the new principle under consideration overrule "clear past precedent on which litigants may have relied" or "decid[e] an issue of first impression whose resolution was not clearly foreshadowed,"
>
> second, in light of its "purpose and effect," will retroactive application of the rule in question "further or retard its operation,"
>
> third, could retroactive application of the principle in question "produce substantial inequitable results" in individual cases....

*See Wycoff v. Menke,* 773 F.2d 983, 986 (8th Cir.1985), *quoting Chevron Oil,* 404 U.S. at 107, 92 S.Ct. at 355. *See also Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *Occhino v. United States,* 686 F.2d 1302, 1307 (8th Cir.1982).

*Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985).

---

**6.** Judge Alsop's decision was based primarily on the reasoning of the Eleventh Circuit in *Jones v.*

### 1. First Prong Analysis

In the case at bar, defendants argue [7] that application of the tripartite *Chevron* test to plaintiff's claim is foreclosed by recent decisions of the United States Court of Appeals for the Eighth Circuit in *Wycoff v. Menke*, 773 F.2d at 986–87, *Bolton v. Foreman*, 782 F.2d 1047 (8th Cir.1985), and *Farmer v. Cook*, 782 F.2d 780 (8th Cir. 1986). In all three decisions the Eighth Circuit gave *Wilson* retroactive application. Defendants argue that district court resort to the *Chevron* test is precluded by the "law of the circuit" laid down in *Wycoff, Bolton,* and *Farmer.* The Court finds this unconvincing. The Court concludes that rather than establishing a blanket rule of retroactivity applicable to all cases throughout the Eighth Circuit, *Wycoff* and progeny establish a more limited precedent applicable to a specific category of cases. The Court derives support for this conclusion from the following factors.

First, *Wycoff* and its progeny are not controlling for the simple reason that the key facts in those cases are distinguishable from the facts in the case before the Court. In each of those cases the party seeking to avoid retroactive application of *Wilson* was unable to meet the threshold requirement of *Chevron*—justifiable reliance on clear past precedent. In applying this first prong of the *Chevron* test the Court must determine whether *Wilson* "established a new principle of law ... by overruling clear past precedent on which litigants may have relied." *Wycoff,* 773 F.2d at 986, *quoting Chevron,* 404 U.S. at 106, 92 S.Ct. at 355. In considering the reliance factor,

the courts have looked "primarily to whether [litigants] have justifiably relied on a prior rule of law ... different from that announced by the decision whose retroactivity is at issue." *Solem,* 104 S.Ct. at 1343. This first, and most important [8] *Chevron* factor requires proof "that the prior precedent be sufficiently clear that a plaintiff could have reasonably relied upon it in delaying suit, a criterion that [is] not met where the law was erratic and inconsistent." *Fitzgerald v. Larson,* 769 F.2d 160, 163 (3d Cir.1984). In *Wycoff* the Eighth Circuit expressly found that *"Wilson* overruled no 'clear past precedent on which litigants [such as Wycoff] may have relied.'" *Wycoff,* 773 F.2d at 986. At the date Wycoff filed his action, calendar year 1981, the issue of the applicable statute of limitations "had led to confusing and inconsistent results both nationally, and within this circuit." *Wycoff,* 773 F.2d at 986 (citations omitted). This confusion was laid to rest by the Eighth Circuit's January 5, 1982 decision in *Garmon v. Foust,* 668 F.2d 400 (8th Cir.1982) (en banc). In *Garmon* the court declared that the limitations period provided by state law for tort actions was inapplicable to section 1983 claims, the court opting instead for the state law limitations period for liability created by statute, or, alternatively, the forum state's "catch all" limitations period. *Garmon,* 668 F.2d at 406. The court reaffirmed *Garmon* in a decision entered August 25, 1982, *Occhino v. United States,* 686 F.2d 1302 (8th Cir.1982). In *Occhino,* the court expressly declared:

**7.** Defendants argue that *Wilson* itself mandates retroactivity, in that the Supreme Court in that case upheld the Tenth Circuit's act of applying its new ruling on a retroactive basis. The Court finds itself in agreement with the majority of courts which have ruled that the *Wilson* decision is silent on the retroactivity issue. First, the effect of retroactive application in *Garcia v. Wilson* was to lengthen, rather than shorten, the applicable limitations period, and thus to permit a cause which would have been otherwise time-barred. Second, footnote ten of Justice Stevens' majority opinion seems to endorse the decision of the Tenth Circuit (entered the same day as *Garcia v. Wilson*) not to "bar 'plaintiffs' right to their day in court when their action was timely

under the law in effect at the time their suit was commenced.'" *Wilson,* 105 S.Ct. at 1942, *quoting Jackson v. City of Bloomfield,* 731 F.2d at 655.

Of course, the Court does not make a pretense that footnote ten, standing alone, justifies today's holding. Neither is it convinced by defendants' arguments that the *Wilson* Court "implicitly" mandated that decision have retroactive effect, however. It seems clear to the Court that the *Wilson* Court left the retroactivity issue for consideration on another day. *See Bynum,* 622 F.Supp. at 198 n. 3.

**8.** The first *Chevron* factor is the most important factor. *Wycoff,* 773 F.2d at 985.

Minnesota's six-year statute of limitations [for liability created by statute] clearly would apply, were appellant today to file his § 1983 action....

*Occhino,* 686 F.2d at 1308. The significance of these decisions for present purposes is manifest. At the time Wycoff's cause of action accrued and was filed, by the court's own admission, the law in this circuit as to the applicable period of limitations in a section 1983 action was "confusing and inconsistent." *Wycoff,* 773 F.2d at 986. Thus, Wycoff was "on notice that a two-year limitations period [as provided by Iowa tort law] might be applicable to his claim." *Wycoff,* 773 F.2d at 986. As such, Wycoff's reliance on a longer limitations period was unjustified. Similarly, in *Bolton* plaintiff's cause of action accrued more than two years prior to *Garmon.* Consequently, Bolton could not justifiably have relied upon a clear precedent later overruled by *Wilson.*[9] In contrast, at the time Chris N.'s cause of action accrued, *Garmon* stood as a clear precedent—one establishing a six-year limitation period for section 1983 actions filed in Minnesota district court. Thus, this case, which accrued post-*Garmon* and pre-*Wilson,* is clearly distinguishable from *Wycoff, Bolton,* and *Farmer,* cases in which plaintiffs' causes of action accrued pre-*Garmon* and pre-*Wilson.* Here plaintiff has satisfied the threshold requirement of *Chevron*—justifiable reliance on clear past precedent. In *Wycoff, Bolton,* and *Farmer* such a showing was simply not possible. As stated by Judge

Alsop in *Cook v. City of Minneapolis,* "[c]learly *Wilson v. Garcia* overrule past precedents of the Eighth Circuit as embodied in *Occhino* and *Garmon." Cook,* 617 F.Supp. at 466. The Court finds that the threshold requirement of *Chevron* has been met in the circumstances of the case at bar, and that *Wycoff, Bolton,* and *Farmer* are factually inapposite.

Second, the very language of *Wycoff* and *Farmer* makes clear that those cases are limited to a particular, factually distinct category of cases.[10] In *Wycoff* the court stated "we conclude *Wilson* overruled no 'clear past precedent on which litigants [*such as Wycoff*] may have relied,'" 773 F.2d at 986 (emphasis added), and that "we have little trouble concluding ... that it is neither harsh, injust, nor inequitable to apply *Wilson* retroactively to claims *such as Wycoff's.*" 773 F.2d at 987 (emphasis added). The final paragraph of the court's opinion commences with the following observation: "We believe *Wilson* should be applied retroactively *to Wycoff's claim.*" 773 F.2d at 987 (emphasis added). This limiting language, so painstakingly inserted by the *Wycoff* court, conclusively demonstrates that the reasoning and ruling in that case are limited to the facts there present.

Third, the very language of the *Chevron* test makes clear that it is a uniquely fact-intensive inquiry, one which defies broad generalization. The first prong of the *Chevron* test requires an analysis of the

---

**9.** Wycoff's cause of action accrued in 1977; Bolton's December 23, 1979. Thus, for each of these plaintiffs, the arguably applicable limitations period had run by the time the *Garmon* decision was handed down. These plaintiffs simply could not have pointed to *Garmon* as justification for their delay. In contrast, Chris N. and the plaintiff in *Cook* could justifiably have relied on *Garmon* in deciding to delay suit. This is the key distinction.

In *Farmer* it was the defendant who sought to avoid retroactive application. Under Missouri law pre-*Wilson,* the applicable limitations period was three years, while under Missouri law post-*Wilson* the applicable period of limitations is five years. Thus, in *Farmer* the effect of retroactivity was "to revive an action that the defendants once reasonably believed was barred." *Farmer,* 782 F.2d at 781. Finding that

"the reliance interest asserted by the defendants here is ... weaker than that asserted by the plaintiff in *Wycoff* ...," 782 F.2d at 781, the court ruled in favor of retroactivity.

**10.** *Bolton* is a three-paragraph per curiam opinion in which the court appears to hold that *Wilson* is to be given blanket retroactive application. The subsequently-decided *Farmer* case militates against a conclusion that *Wycoff* is to be followed irrespective of the case's factual context, however, in that the *Farmer* court applied first-prong *Chevron* analysis to the facts of that case. Obviously, the *Farmer* court, which represents the most recent Eighth Circuit teaching on this matter, did not believe that *Wycoff* and *Bolton* foreclosed independent *Chevron* analysis on the facts of that case.

justifiable reliance of particular litigants, and the third prong mandates an analysis of whether retroactivity will produce " 'substantial inequitable results' in individual cases." *Wycoff,* 773 F.2d at 986. Indeed, the construction of the *Chevron* test urged by defendants would inevitably subject section 1983 plaintiffs to an egregiously unfair game of jurisprudential chance— should the first case reaching the circuit court happen to be one accruing more than two years prior to *Garmon,* all section 1983 plaintiffs throughout the circuit would find themselves subject to retroactivity, while in contrast, should the lot happen to fall on a post-*Garmon* accruing case, all section 1983 plaintiffs across the circuit would find themselves the fortunate beneficiaries of a non-retroactivity ruling. Such results were surely not intended by the Court which decided *Chevron* or by the Congress which enacted section 1983.

Fourth, the construction of *Chevron* here adopted has been followed by other circuit and district courts in an analogous context—cases construing the retroactive application of the Supreme Court's decision in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In *DelCostello*[11] the Supreme Court adopted a six-month statute of limitations period for "hybrid" suits against an employer for breach of the collective bargaining agreement and against the plaintiff's union for breach of its duty of fair representation. *See* 29 U.S.C. § 185. The courts were subsequently put to the task of determining whether particular hybrid suits were to be subject to retroactive application of the principle announced in *DelCostello.* A brief summary of the approach adopted by the Fourth, Ninth, and Second Circuits in this regard is instructive.

In the first case to reach the Fourth Circuit following *DelCostello* the court ruled that in an action brought by a Maryland plaintiff *DelCostello* was to receive retroactive application. *See Murray v. Branch Motor Express Co.,* 723 F.2d 1146 (4th Cir.1983). That *Murray* did not establish a binding "law of the circuit" applicable to every make and manner of hybrid suit was made clear by subsequent decisions of the Fourth Circuit in *Zemonick v. Consolidation Coal,* 762 F.2d at 383–88; *Carpenter v. West Virginia Flat Glass, Inc.,* 763 F.2d 622 (4th Cir.1985); and *Triplett v. Brotherhood of Railway, Airline and Steamship Clerks,* 763 F.2d 625 (4th Cir.1985). In *Zemonick,* after noting its prior holding in *Murray,* the court pointed out that "[a]pplication of [*DelCostello* ] to the two cases before the Court simply does not suggest that, in other cases, application of [*DelCostello* ], under quite different circumstances, might not appropriately call for consideration of a retroactive application under the *Chevron* standards." *Zemonick,* 762 F.2d at 384. Because of factual distinctions between *Murray* and the case before it the *Zemonick* court concluded that "[n]othing in *Murray* ... is applicable to the problem we face," 762 F.2d at 386, and accordingly went on to apply the *Chevron* test to the facts before it. Similarly, in the *Triplett* and *Carpenter* cases, each brought by a West Virginia plaintiff, separate panels took note of the factual distinction between those cases, in which plaintiffs were justified in relying on a clear

---

**11.** The courts have recognized that the retroactivity issue in the context of *Wilson* is closely proximate to *DelCostello* retroactivity analysis. In both *Wilson* and *DelCostello* the Supreme Court ended conflict among the circuits by designating a "uniform" limitations period thereafter applicable to the subject federal action. In both cases the retroactivity issue was left unaddressed by the Supreme Court. Thus, many courts have looked to *DelCostello* retroactivity caselaw for guidance when faced with claims of retroactive application of *Wilson.* *See Smith,* 764 F.2d at 196; *Mulligan,* 777 F.2d at 344; *Van Ryn,* 614 F.Supp. at 402; *Snowden,* 613 F.Supp.

at 1209; *Moore,* 614 F.Supp. at 334 n. 8. Of course, *DelCostello* and *Wilson* are conceptually inapposite in one key respect, as noted in *Moore v. Floro:* "*DelCostello* was clearly foreshadowed by recent Supreme Court cases, and its retroactive application promoted the strong federal policy of rapid disposition of labor controversies. On the other hand, *Wilson v. Garcia* sharply departed from past Supreme Court precedent, and the remedial policies behind § 1983 actions would be disserved by its retroactive application. Thus, *Wilson* represents far more than a mere clarification of the law." *Moore,* 614 F.Supp. at 334 n. 8.

past precedent in delaying suit, and *Murray*, in which no clear past precedent existed, in holding that *Murray* was uncontrolling and that under *Chevron* analysis *DelCostello* would not be retroactively applied. That the court was not simply reversing *Murray* was made clear by a decision entered within days of *Zemonick, see DelCostello v. Local 557, International Brotherhood of Teamsters,* 762 F.2d 1219 (4th Cir. 1985), in which another panel of that court relied on *Murray* in finding that a hybrid suit brought by a Maryland plaintiff was barred by retroactive application of the Supreme Court's *DelCostello* decision. In so ruling the *DelCostello* court was careful to distinguish *Zemonick,* finding that while in the case before it no clear past precedent existed on which the plaintiff might justifiably have relied, in *Zemonick* "there was clear past precedent ... that West Virginia's five-year statute of limitations for oral contracts governed" hybrid actions. *DelCostello,* 762 F.2d at 1222 n. 3. Based on these factual distinctions the court came to differing conclusions applying *Chevron* analysis.

The first case to reach the Second Circuit following *DelCostello* was *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239 (2d Cir.1984). The *Welyczko* court opted for retroactive application of *DelCostello,* relying primarily on decisions of other circuits as well as the fact that "the Supreme Court not only adopted a new statute of limitations in *DelCostello;* it applied that time bar retroactively to govern the very claim at issue in the case before it." *Welyczko,* 733 F.2d at 241. The court went on to "adopt for this circuit the rule that in employment termination cases, a six-month statute of limitations applies both retroactively and prospectively to wrongful discharge/failure to represent claims." *Welyczko,* 733 F.2d at 241. That the *Welyczko* holding was not as sweeping as it purported to be was made evident by *Byrne v. Buffalo Creek Railroad Co.,* 765 F.2d 364 (2d Cir.1985). In *Byrne,* when faced with facts conceptually distinct from those before the *Welyczko* court, the court found that "considerations of equity require us not to [retroactively] apply *DelCostello.*" *Byrne,* 765

F.2d at 366. In so ruling, the court made the following observation:

> Although we noted in *Welyczko* that the six-month statute of limitations for wrongful discharge and unfair representation cases ought to be applied retroactively without regard to the above three-factor analysis, neither that holding nor *DelCostello* itself foreclosed the possibility of there ever being a case in which, because of special circumstances, we would find that the retroactive application of the six-month statute of limitations would be inappropriate.

*Byrne,* 765 F.2d at 366. The court went on to add "we have not overruled or eviscerated *Welyczko.....* We except this case [from application of *DelCostello* ] only because we believe it ... contrasts sharply with all other cases, including *Welyczko,* in which similar claims have been dismissed based on a retroactive application of ... *DelCostello....*" *Byrne,* 765 F.2d at 367 n. 1. Based on factual distinctions the Second Circuit came to differing conclusions applying *Chevron* analysis.

The experience of the Ninth Circuit in construing the retroactivity of *DelCostello* has been similar to that of the Second and Fourth Circuits. In the first cases to reach the Ninth Circuit the court opted for non-retroactive application of *DelCostello. See Barina v. Gulf Trading and Transportation Co.,* 726 F.2d 560, 563–64 (9th Cir. 1984); *McNaughton v. Dillingham Corp.,* 722 F.2d 1459, 1461 (9th Cir.1984); *Edwards v. Teamsters Local Union No. 36,* 719 F.2d 1036, 1040 (9th Cir.1983). When faced with a factually distinct claim, however, the court in *Glover v. United Grocers, Inc.,* 746 F.2d 1380, 1382 (9th Cir. 1984) had "no difficulty" giving *DelCostello* retroactive application. The court distinguished *Glover* from its prior holdings by noting that in *Glover* the threshold *Chevron* test—justifiable reliance on a clear past precedent—had not been met, while in the prior cases it had. *Glover,* 746 F.2d at 1382. The Ninth Circuit in subsequent cases has determined that *DelCostello* does warrant retroactive application. *See International Association of Machinists and Aerospace Workers v. Aloha Airlines,*

*Inc.*, 781 F.2d 1400 (9th Cir.1986). Based on factual distinctions in the cases before it, the Ninth Circuit came to differing conclusions applying *Chevron* analysis.

The fifth and most significant factor which leads the Court to conclude that *Wycoff* does not establish a binding "law of the circuit" derives from decisions of the Ninth Circuit construing *Chevron* in the context of *Wilson v. Garcia.* In *Rivera v. Green,* the first case to reach the Ninth Circuit following *Wilson,* analysis of the three *Chevron* factors led the court to conclude that "retroactive application is appropriate." *Rivera,* 775 F.2d at 1383. The *Rivera* court specifically found that the "pre-*Wilson* ... statute of limitations [in Arizona where plaintiff's cause of action arose] was clear," and that retroactive application of *Wilson* would not produce "substantial inequitable results." *Rivera,* 775 F.2d at 1383. That *Rivera* did not establish a "law of the circuit" binding on all section 1983 litigants no matter the context in which their claims arose was made clear by the court's subsequent decision in *Gibson v. United States,* 781 F.2d 1334 (9th Cir.1986). In *Gibson,* the court stated:

> In *Rivera v. Green,* 775 F.2d 1381 (9th Cir.1985), this court granted *Wilson* retroactive application.... The case before us is not controlled by *Rivera,* because *Rivera* expressly limited its holding to cases in which retroactive application "would advance the litigant's ability to pursue section 1983 remedies at the expense of a [disfavored] statute of limitations defense." *Rivera* at 1384. In this case, retroactive application would thwart, rather than enhance, the remedial purposes underlying section 1983. Thus, we undertake an independent retroactivity analysis on the facts of this case, and we conclude that ... *Wilson* merits only prospective effect.

*Gibson,* 781 F.2d at 1339 (footnote omitted).

In sum, the Court is convinced that the fact-intensive nature of the *Chevron* test precludes broad generalizations applicable to all manner of section 1983 cases and that, accordingly, *Wycoff, Bolton,* and *Farmer* do not bar "independent retroac-

tivity analysis on the facts of this case." A close reading of the cases in which *Chevron* analysis has been applied in the context of *Wilson* and other judicial decisions reveals that *Chevron* analysis of necessity proceeds on a case-by-case (or perhaps category-by-category) basis. *See, e.g., Small v. Inhabitants of City of Belfast,* 617 F.Supp. 1567, 1577 (D.Maine 1985) (holding that *Wilson* principles will not be retarded by nonretroactive application "to the present suit"); *Hobson v. Brennan,* 625 F.Supp. 459, 468 (D.D.C.1985) (holding that *Wilson* should not be retroactively applied based on the "facts of this case"); *United States v. Benitz Rexach,* 411 F.Supp. 1288, 1293 (D.P.R.1976) ("the general principles that govern retroactivity should be applied on a case by case basis"). In a leading retroactivity case, *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973), the Supreme Court declared that:

> The process of reconciling the constitutional interests reflected in a new rule of law with reliance interests founded upon the old is "among the most difficult of those which have engaged the attention of courts...." Consequently, our holdings in recent years have emphasized that the effect of a given constitutional ruling on prior conduct "is subject to no set 'principle of absolute retroactive invalidity' but depends upon a consideration of 'particular relations ... and particular conduct....' "

*Lemon,* 411 U.S. at 198–99, 93 S.Ct. at 1468 (citations omitted). Similarly, in the seminal case of *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), from which the three-part *Chevron* test was principally derived, it was declared that:

> Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits *in each case* by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.

*Linkletter,* 381 U.S. at 629, 85 S.Ct. at 1738 (emphasis added). *See also* the three Third

Circuit decisions in which retroactive application of *Wilson* has been considered, each of which reaches the same conclusion, but each of which takes up the threshold *Chevron* analysis anew: *Smith v. City of Pittsburgh,* 764 F.2d 188 (3d Cir.1985); *Fitzgerald v. Larson,* 769 F.2d 160 (3d Cir.1985); *Bartholomew v. Fischl,* 782 F.2d 1148 (3d Cir.1986). *See also Al-Khazraji v. St. Francis College,* 784 F.2d 505 (3d Cir. 1986).

 Accordingly, based on the limiting language of *Wycoff,* the fact-intensive nature of the *Chevron* test, the analogous *DelCostello* line of cases, and the persuasive reasoning of the Ninth Circuit in *Rivera* and *Gibson,* the Court concludes that it is not barred by *Wycoff, Bolton,* and *Farmer* from applying *Chevron* to the facts of this case. Because the Court has concluded that the threshold prong of *Chevron* analysis has been met in the case at bar, analysis now turns to the remaining two prongs.

### 2. Second Prong Analysis

The second prong of *Chevron* analysis requires an examination of the purposes of the rule announced in *Wilson. Cook,* 617 F.Supp. at 466. The Court must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retroactive application of the rule will further or retard its operation. *Smith,* 764 F.2d at 195, *quoting Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355.

The *Wilson* decision was designed to further the federal interests in "uniformity, certainty, and the minimization of unnecessary litigation." *Wilson,* 105 S.Ct. at 1947. The choice of the personal injury limitations period over other possible choices also minimized the risk that states would provide a discriminatory period of limitations or one inadequate to serve the federal interests embodied in section 1983. *Smith,* 764 F.2d at 196. The courts which have applied *Chevron* analysis in the context of *Wilson* have found that where the section 1983 statute of limitations was uniform in a particular state or district prior to *Wilson,* "retroactive application would not significantly advance" the federal interest in uniformity, certainty, and the minimization of unnecessary litigation. *Rivera,* 775 F.2d at 1383; *de Furgalski v. Siegel,* 618 F.Supp. 295 (N.D.Ill.1985) (nonretroactive application of *Wilson* would not retard the purposes of *Wilson* because a uniform approach already existed within the circuit); *Johnson v. Arnos,* 624 F.Supp. 1067, 1074 (N.D.Ill.1985) (nonretroactive application would not retard purpose of *Wilson* since "Illinois has had uniformity and certainty since 1977"). As stated by the Ninth Circuit in *Gibson:*

> The second *Chevron* factor ... does not counsel either way, because this circuit's clear, consistent enunciation of the previous rule served the chief policy goals articulated in *Wilson:* (1) safeguarding the rights of federal civil rights litigants; (2) achieving certainty; and (3) avoiding wasteful relitigation of collateral matters.

*Gibson,* 781 F.2d at 1339.

The Eighth Circuit's "clear, consistent enunciation" in *Garmon* and *Occhino* of the rule applicable to the district served the policy goals articulated in *Wilson.* Accordingly, the Court finds that nonretroactive application of *Wilson* will neither retard nor hamper attainment of the purposes of that decision.[12]

---

**12.** In *Wycoff* the Eighth Circuit concluded that "retroactive application (of *Wilson* ) will achieve uniformity and certainty between future and pending cases by subjecting both to the same statute of limitations and thus to the same limitations period." *Wycoff,* 773 F.2d at 987. As subsequent courts have perceptively pointed out, however, the uniformity sought in *Wycoff* differs significantly from the uniformity sought by the *Wilson* majority. While *Wycoff* seeks uniformity between future and pending cases,

Justice Stevens' *Wilson* opinion makes clear that the uniformity which is sought is *uniformity within states.* Due to the very nature of the section 1988 borrowing scheme, the *Wilson* uniformity characterization does not result in one limitations period being applied to all civil rights cases regardless of the state in which they arose. Rather, the limitations statute of each state are to be reviewed to determine which particular state statute is most applicable to actions for personal injury. The resulting "uni-

### 3. Third Prong Analysis

The third prong of the *Chevron* test requires the Court to determine whether the retroactive application of *Wilson* will result in "harsh, unjust or inequitable results." *Wycoff*, 773 F.2d at 987. The Court has little difficulty concluding that a retroactive application of *Wilson* in the circumstances of the case at bar "shouts of inequity." *Zemonick*, 762 F.2d at 387. Through the date the *Wilson* decision was handed down, plaintiff was justified in believing, based on the uncontravertible holdings of *Garmon* and *Occhino*, that his cause of action was not time-barred. *See Cook*, 617 F.Supp. at 466. In fact, plaintiffs could not reasonably have drawn any other conclusion. If the Court assumes, as it must, that plaintiff has a meritorious claim upon which he is entitled, at a bare minimum, to a reasoned decision on the merits, the belated erection of a procedural bar is an unwarranted frustration of plaintiff's reasonable expectation of adjudication on the merits. *Zemonick*, 762 F.2d at 387. To hold that plaintiff's lawsuit is retroactively time-barred would have the effect of depriving plaintiff of any remedy whatsoever on the basis of a "superceding legal doctrine that was quite unforeseeable." *McNaughton*, 722 F.2d at 1461. As stated in the *Chevron* case:

It would ... produce the most "substantial inequitable results" ... to hold that the respondent "slept on his rights" at a time when he could not have known the time limitation that the law imposed on him.

*Chevron*, 404 U.S. at 108, 92 S.Ct. at 356 (citation omitted). The Court refuses to wreak subsequently imposed requirements on plaintiffs who did all that was necessary to comply with the law applicable at the time their causes of action accrued and were filed. In so doing, the Court avoids the "brutal absurdity of commanding a man today to do something yesterday," L. Fuller, *The Morality of Law* 59 (1964),[13] and the manifest injustice which would result from a mechanical *ex post facto* curtailment of the limitations period. *Moore*, 614 F.Supp. at 334. While prejudice to the defendants "might occasionally result from the resurrection of a claim once thought dead, it is not likely to equal the prejudice to the plaintiff resulting from the unexpected death of a claim thought to be alive." *Barina*, 726 F.2d at 564. As stated in *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969):

Significant hardships would be imposed on [plaintiff and third parties] if our decision today were given full retroactive effect. Where a decision of this Court could produce substantial ineq-

---

form" period of limitations will thus vary from state to state. Within each state, however, uniformity will exist. *See Garcia v. Wilson*, 731 F.2d 640, 651 n. 4 (10th Cir.1984). That the aim of the *Wilson* Court was to effect uniformity within states, and not between filed and future cases, is made clear by an analysis of Justice Stevens' opinion. Justice Stevens concluded that "uniformity within each State is entirely consistent with the borrowing principle contained in § 1988." *Wilson*, 105 S.Ct. at 1947. Instructively, in cases handed down on the same day as *Garcia v. Wilson*, the Tenth Circuit designated uniform limitations periods by state. *See Hamilton v. City of Overland Park*, 730 F.2d 613 (designating two-year statute in Kansas); *Mismash v. Murray City*, 730 F.2d 1366 (designating four-year statute in Utah); *McKay v. Hammock*, 730 F.2d 1367 (designating three-year statute in Colorado). The Supreme Court's affirmance of the Tenth Circuit's *Garcia* approach has been taken by most courts to be an imprimatuer of acceptance of the state-by-state approach to the

uniformity issue. Of course, where there exists a clear, consistent pre-*Wilson* enunciation of the applicable rule, uniformity within a state already exists. That is the case in the District of Minnesota. In contrast to *Wycoff*, the majority of courts which have considered the question have agreed that retroactive application of *Wilson* will "neither retard nor promote" the purposes of *Wilson* and that, accordingly, the second prong of the *Chevron* test is at best "inconclusive." *Bynum v. City of Pittsburgh*, 622 F.Supp. 196, 198 (N.D.Cal.1985); *Cook*, 617 F.Supp. at 466; *Moore*, 614 F.Supp. at 333; *Small*, 617 F.Supp. at 1577; *Jackson v. City of Bloomfield*, 731 F.2d 652 (10th Cir.1984).

13. In *Griffin v. Illinois*, 351 U.S. 12, 26, 76 S.Ct. 585, 594, 100 L.Ed. 891 (1955), it was stated that the courts "should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights."

uitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.

*Cipriano*, 395 U.S. at 706, 89 S.Ct. at 1900.

■ Defendants argue that even assuming that *Wilson* is not to be applied retroactively, in the circumstances of this case plaintiff's action is time-barred because plaintiff's action was not filed until October 11, 1985, some six months after *Wilson*. The Court finds this argument unconvincing. A necessary corollary of prospective application of a new rule of law is the proposition that parties who may justifiably have relied upon the displaced rule must be allowed a reasonable period of time following the change in law in which to file suit. It has been recognized consistently that legislation which has the effect of cutting off existing rights by shortening limitations periods is nonetheless constitutional provided that "a reasonable time is given for the commencement of an action before the bar takes effect." *Texaco, Inc. v. Short*, 454 U.S. 516, 527 n. 21, 102 S.Ct. 781, 791, n. 21, 70 L.Ed.2d 738 (1981), *quoting Terry v. Anderson*, 95 U.S. 628, 632–33, 24 L.Ed. 365 (1877).[14] This fundamental precept is not altered by the fact that it is a court rather than a legislature which has acted to change the limitations period.

*Shorters*, 617 F.Supp. at 668. Thus, the courts have recognized that plaintiffs who may justifiably have relied upon clear pre-*Wilson* precedent should be permitted a reasonable period of time following *Wilson* in which to file suit. *See, e.g., Wegrzyn*, 627 F.Supp. at 640–41; *Shorters*, 617 F.Supp. at 667–68. In this district, where uncertainty as to which of the two Minnesota personal injury statutes would apply to section 1983 actions was not resolved until *Cook v. City of Minneapolis* was decided August 16, 1985, it is clear that section 1983 plaintiffs should have a reasonable period of time following *Cook* in which to file suit.[15] The question remaining is what period is a "reasonable" period. In *Shorters* it was declared that 75 days following *Wilson* was not unreasonable, *Shorters*, 617 F.Supp. at 668, and in *Wegrzyn* it was held that four months following *Wilson* was not unreasonable. *Wegrzyn*, 627 F.Supp. at 641. Here plaintiff's cause of action was filed within 56 days of *Cook*. It cannot be said that a 56-day delay is unreasonable. The Court concludes that plaintiff's claim was filed within a reasonable period of time following *Cook*.

In ruling against retroactive application of *Wilson* the Court joins those courts which have found that the *Chevron* test on balance militates in favor of prospectivity.

*Texaco*, 454 U.S. at 527 n. 21, 102 S.Ct. at 791 n. 21.

**14.** In *Texaco* the Court cited with approval the following passage from *Wilson v. Iseminger*, 185 U.S. 55, 62–63, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902):

It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice.

**15.** Requiring plaintiffs to file suit within a reasonable period of time following *Wilson* would be clearly unjust. As noted above, Minnesota has two statutory limitations periods applicable to personal injury actions and it was only following Judge Alsop's decision in *Cook* that plaintiffs could have known that the two-year statute was the applicable statute.

Of course, once on notice that the two-year statute pertains, the onus is on section 1983 plaintiffs to file suit within a reasonable period. Plaintiffs who unreasonably delay will of necessity find that their actions are time-barred, no matter the extent of their reliance on pre-*Wilson* caselaw. The observation made at oral argument before the Court—that should the Court rule against retroactivity it will face this issue into the year 1991—is thus patently incorrect. This knotty jurisprudential problem is a short-lived one, soon to be gone from our midst.

The Court fully recognizes that many courts have come to a contrary conclusion. Upon close inspection, however, it appears that this "split of authority" is more apparent than real. As noted above, the most significant of the *Chevron* factors is the plaintiff's justifiable reliance on clear past precedent. Research reveals that in virtually all of the cases holding for retroactive application of *Wilson*, the courts have first taken pains to point out that the plaintiffs before the court were not justified in relying upon a longer limitations period, either due to a pre-*Wilson* conflict of authority or other factors. Given that the second *Chevron* prong is inconclusive, and that the third will almost invariably favor plaintiffs, the first, "threshold" factor has become predominant. Here plaintiff was justified in relying on clear past precedents. As such, this case does not represent a break from the reasoning and analysis of *Wycoff*, *Farmer*, and the other cases within and without this circuit holding for retroactivity, but rather a concretely distinct factual setting calling for a conclusion of prospectivity.

Accordingly, based on the foregoing, and upon all the files, records, and proceedings in this matter, IT IS ORDERED that defendants' motion to dismiss is denied.